UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIELLE B.,

                        Plaintiff,

v.                                                     6:19-CV-0306
                                                           (TWD)
COMM'R OF SOC. SEC.,

                        Defendant.
_____

APPEARANCES:                                       OF COUNSEL:
LAW OFFICES OF STEVEN R. DOLSON       STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                TIMOTHY A. RAZEL, ESQ.
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Danielle B. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 7 and 8.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the Social Security Administration for a *de novo* review consistent with this Decision and Order.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

Plaintiff was born in 1970, making her 45 years old at the alleged onset date and 47 years old at the ALJ's decision.  Plaintiff reported completing the twelfth grade, and she has previous work as a social service aide, home attendant, and community placement worker.  She initially alleged disability due to a herniated disc, degenerative disc disease, a bulging disc, and spinal stenosis.

   B.      **Procedural History**

Plaintiff applied for a period of disability and Disability Insurance Benefits on January 6, 2016, alleging disability beginning August 28, 2015.  (T. 67-68, 158-59.) [1]  Her application was initially denied on March 17, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 67-80, 96-97.)  She appeared at an administrative hearing before ALJ Victor L. Horton on February 23, 2018.  (T. 29-66.)  On May 24, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 12-28.)  On January 31, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

   C.      **The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law.  (T. 17-24.) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.  (T. 17.)  She has not engaged in substantial gainful activity since August 28, 2015, the

---

[1]      The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

alleged onset date.  (*Id.*)  Her degenerative disc disease with stenosis status post laminectomy, radiculopathy, chronic pain syndrome, peripheral artery disease, and obesity are severe impairments.  (*Id.*)  However, Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1.  (T. 18.)  She has the residual functional capacity ("RFC") to perform light work

> except that she must have sit/stand option at the worksite with ability to change positions frequently, further defining "frequently" as every hour for one minute and then she can return to the same or a different position; she can occasionally climb stairs and ramps, but can never climb ladders or scaffolds; she can occasionally stoop, but can never kneel, crouch, or crawl; she can frequently push and pull with her arms and reach in all directions, but can only occasionally reach overhead; she can occasionally push and pull with her legs; she can never lift overhead; she must avoid concentrated exposure to extreme cold and vibrations, further defining "vibrations" as performing jobs such as operating jackhammers or other equipment where the operator is significantly vibrated; and she must avoid all hazards of machinery and heights.

(T. 18-19.)  Based upon this RFC, Plaintiff can perform past relevant work as a social service aide and community placement worker, both as generally and as actually performed.  (T. 21-23.)  Further, she can also perform other jobs existing in significant numbers in the national economy.  (*Id.*)  The ALJ therefore concluded Plaintiff is not disabled.  (T. 23-24.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff argues the ALJ violated the treating physician rule in discounting the opinions of treating physician Farook Kidwai, M.D.  (Dkt. No. 7 at 5-10.)  Defendant contends Dr. Kidwai did not qualify as a treating source whose opinions were subject to the treating physician rule, the ALJ applied the appropriate regulatory factors in weighing Dr. Kidwai's opinions with substantial evidence supporting the ALJ's assessment of little weight, and any error was

harmless because Dr. Kidwai's opinions did not address Plaintiff's functional capacity for any period of at least 12 consecutive months.  (Dkt. No. 8 at 3-4, 14-22.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S ANALYSIS OF THE OPINION EVIDENCE OR THE RFC DETERMINATION

#### A. Applicable Law

##### 1. Residual Functional Capacity

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

##### 2. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

In *Estrella v. Berryhill*, the Second Circuit has more recently addressed an ALJ's failure to "explicitly" apply the regulatory factors set out in *Burgess* when assigning weight to a treating physician's opinion. 925 F.3d 90 (2d Cir. 2019). In *Estrella*, the Court explained that such a failure is a procedural error and remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'" 925 F.3d at 96 (alteration in original) (quoting *Halloran*, 362 F.3d at 32). The Court further clarified that "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32). The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." *Id.*

7

In *Estrella*, the Court concluded the record did not otherwise provide good reasons for the weight afforded to the treating physician opinion and pointed to "a number of treatment notes not cited by the ALJ reflect[ing] a more serious impairment than the ALJ acknowledged[,]" Estrella's Global Assessment of Functioning ("GAF") scores, and the opinion of a one-time consultative psychologist, all of which the Court concluded did "not provide good reasons for assigning little weight to [the treating psychiatrist's] opinion." 925 F.3d at 96-98.  Finally, the Court indicated "the ALJ's two cherry-picked treatment notes [did] provide 'good reasons' for minimalizing [the treating psychiatrist's] opinion" and noted that "[t]he ALJ made no attempt to 'reconcile' or 'grapple with' the apparent longitudinal inconsistencies in Estrella's mental health—one of the motivations beyond *Burgess*'s procedural requirement of explicit consideration of 'the frequen[cy], length, nature, and extent of [a physician's] treatment.'" *Id*. at 97 (quoting *Selian*, 708 F.3d at 418-19).  The Court ultimately chose to remand the *Estrella* case "[i]n light of the ALJ's failure to 'explicitly consider' the first *Burgess* factor before assigning 'little weight' to the opinion of Estrella's treating psychiatrist, and the lack of 'other good reasons' to support that decision" and concluded "that the ALJ traversed the substance of the treating physician rule." *Id*. at 98.

The Second Circuit recently reiterated its *Estrella* findings in *Ferraro v. Saul*, indicating that the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians, did not otherwise provide "good reasons" for assigning reduced weight to the opinions of those physicians, and a searching review of the record did not assure the Court that the substance of the treating physician rule was not traversed. 2020 WL 1189399, 18-3684, at *2-3 (2d Cir. March 12, 2020).  The Court in *Ferraro* also

indicated that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'" *Id*. at *2.

### 3. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### 4. Developing the Record

It is well-settled that, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville*, 198 F.3d at 51. Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the claimant's RFC. *Covey v. Colvin*, 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6,

2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

### B.     Relevant Opinion Evidence

In March 2016, Plaintiff underwent a consultative internal medicine examination conducted by Elke Lorensen, M.D. (T. 257-62.) Plaintiff reported back pain which had improved after surgery but subsequently returned and radiated into her right leg and right groin, as well as her right leg being cold to the touch with numbness and weakness. (T. 258.) She was not receiving any treatment at that time and took Naproxen by prescription. (*Id*.) Her pain was aggravated by household activities, bending, and lifting as well as prolonged sitting, standing, and walking. (*Id*.) She did not do any cooking, cleaning, laundry, or shopping but showered and dressed daily, watched television, read, and socialized. (*Id*.)

Upon examination, Dr. Lorensen observed that Plaintiff was in no acute distress, she had a normal gait and stance, she declined to walk on her heels and toes or squat, she used no assistive devices and needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. (T. 259.) Plaintiff had a limited range of motion in the lumbar spine with negative straight leg raising testing bilaterally and a limited range of motion in the right shoulder. (T. 260.) She had physiologic and equal deep tendon reflexes in the upper and lower extremities, decreased sensation to light touch in the right leg, full strength in the upper and lower extremities, physiologic and equal pulses, intact hand and finger dexterity, and full grip strength bilaterally. (*Id*.) Dr. Lorensen diagnosed back pain and

indicated Plaintiff was status post lumbar spine surgery.  (*Id*.)  She opined Plaintiff had no gross limitations to sitting, standing, walking, or handling small objects with the hands and moderate limitations in bending, lifting, and reaching.  (*Id*.)  The ALJ afforded partial weight to Dr. Lorensen's opinion.  (T. 21, 260.)

In a December 2016 treatment note, Dr. Kidwai advised Plaintiff to refrain from repetitive bending and twisting of the cervical and lumbar spine, avoid prolonged fixed posture of the cervical spine, and, if working at the computer terminal, to keep the terminal at her eye level.  (T. 281.)  Dr. Kidwai also indicated Plaintiff should refrain from prolonged sitting, standing, walking or driving for more than half an hour at a time and, after each such period of activity, she should change the pace or, better yet, take a five- or ten-minute break if at all possible.  (*Id*.)  She should not lift more than 20 pounds at a time and it appeared she was not a suitable candidate for any employment until her symptoms and Dr. Kidwai's findings were addressed.  (*Id*.)

In a follow-up treatment note from February 2017, Dr. Kidwai advised Plaintiff she "should take it easy and stay off work until symptoms are under better control."  (T. 271, 296.)  Dr. Kidwai advised her to avoid all activities which would aggravate her symptoms, refrain from repetitive bending and twisting of the cervical and lumbar spine, avoid prolonged flexed posture of the cervical spine, and, if working at the computer terminal, she should keep the terminal at her eye level.  (*Id*.)  She should not lift more than 20 pounds at a time and she should refrain from prolonged sitting, standing, walking, or driving for more than half an hour at a time, and, after each such period of activity, she should change the pace or, better yet, take a five- or ten-minute break if at all possible.  (*Id*.)  The ALJ afforded little weight to Dr. Kidwai's opinions.  (T. 21.)

**C.      Analysis**

Plaintiff argues the ALJ failed to give good reasons for discounting Dr. Kidwai's opinions, failed to explicitly consider the regulatory factors in weighing Dr. Kidwai's opinions, and erred in deciding to afford them less than controlling weight. (Dkt. No. 7 at 6-10.) The Court generally agrees with Plaintiff's arguments that the ALJ erred in weighing the opinion evidence and finds that Plaintiff's RFC is not supported by substantial evidence for the following reasons.

First, the ALJ's analysis of the opinion evidence makes it unclear how the ultimate RFC determination was reached. (T. 21.) The limited record contains only three medical opinions, including that of consultative examiner Dr. Lorensen and two from treating physician Dr. Kidwai, assessing Plaintiff's physical limitations. (T. 257-62, 271 (repeated at T. 296), 281.) In determining Plaintiff's RFC, the ALJ afforded partial weight to Dr. Lorensen's opinion, explaining that Dr. Lorensen's opinion indicating moderate limitations in Plaintiff's ability to bend, lift, and reach was "not inconsistent with the residual functional capacity established herein" and was well-supported by diagnostic imaging of her cervical and lumbar spines as well as Dr. Lorensen's own observations of Plaintiff's limited range of motion in her lumbar spine and right shoulder. (T. 21, 245, 259-60, 270, 276-77, 280, 295.) The ALJ therefore afforded substantial weight to this portion of Dr. Lorensen's opinion. (T. 21.) The ALJ explained, however, that the remainder of Dr. Lorensen's opinion including the lack of any limitation to Plaintiff's ability to sit, stand, and walk was "inconsistent with that same diagnostic imaging as well as with the claimant's subsequent diagnosis of peripheral artery disease" and was therefore given little weight. (T. 21, 245, 270, 276-77, 280, 195, 336.)

The ALJ afforded little weight to the December 2016 and February 2017 "work-release statements issued by treating provider" Dr. Kidwai. (T. 21, 271, 281, 296.) The ALJ indicated that "[w]hile Dr. Kidwai has a significant treatment relationship with the claimant, his restrictions are inconsistent with the objective evidence of record" and his opinions appeared to be based on Plaintiff's subjective complaints "as well as her own subjective determination as to when she is able to return to work." (T. 21, 244, 248, 259-60, 289, 341, 349.) The ALJ also noted "Dr. Kidwai's blanket statements of disability invade the province of the Commissioner, with whom the decision of a claimant's ultimate disability rests." (T. 21.)

It appears the ALJ endeavored to afford Plaintiff the benefit of the doubt in analyzing Dr. Lorensen's opinion while rejecting Dr. Kidwai's more restrictive limitations which included that Plaintiff should refrain from prolonged sitting, standing, walking or driving for more than half an hour at a time and after each such period, she should change the pace or take a five-to-ten minute break if possible. (T. 21, 260, 281.) However, the ALJ's overall analysis leaves this Court unable to determine how the RFC was reached and therefore unable to conclude that substantial evidence supports it. With Dr. Kidwai's opinions afforded little weight and Dr. Lorensen's opinion indicating a lack of limitations in sitting, standing, or walking, it is particularly unclear what evidence, opinion or otherwise, on which the ALJ based the RFC limitation indicating that Plaintiff must have a sit/stand option with the ability to change positions every hour for one minute. (T. 18, 21.)

Further, in rejecting Dr. Kidwai's opinions and concluding that diagnostic imaging and Plaintiff's subsequent diagnosis of peripheral artery disease did not support the portion of Dr. Lorensen's opinion indicating a lack of limitation in sitting, standing or walking, the ALJ's analysis implies that there is a gap in the opinion evidence as to what limitations *are* supported.

13

(T. 21.) Rather than further develop the record and/or seek a competent medical opinion to interpret the medical evidence, it appears the ALJ settled on an RFC determination somewhere between Dr. Lorensen and Dr. Kidwai's opinions, which again is unclear in its origin. Although it is within the ALJ's purview to consider all of the evidence including conflicting medical opinions to reach a conclusion regarding a claimant's RFC, there does not appear to be a logical bridge here from the ALJ's analysis to the RFC determination. *See Camarata v. Colvin*, 14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008)) ("[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'"); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (citation omitted). The Court is therefore not convinced there was sufficient evidence for the ALJ to assess Plaintiff's RFC without substituting his own lay interpretation of the raw medical data of record for that of competent medical opinion. *See Covey*, 2015 WL 1541864, at *13; *Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150 (GTS/WBC), 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *Report and Recommendations adopted*, 2016 WL 3951150 (N.D.N.Y. July 20, 2016).

Second, it appears the ALJ improperly discounted Dr. Kidwai's opinion in part on the basis that they were based on Plaintiff's subjective complaints. (T. 21.) The ALJ's analysis of Dr. Kidwai's restriction recommendations fails to note these recommendations are immediately preceded by Dr. Kidwai's discussion of the objective evidence regarding Plaintiff's spinal conditions. (T. 280-81.) For example, in December 2016, Dr. Kidwai found Plaintiff's deep tendon reflexes were absent at the right ankle. (T. 279.) She also had mild-to-moderate

paraspinal spasm in the cervical spine with some restriction of mobility; positive provocative tests for apophyseal arthritis or irritation in the cervical and lumbar spine; dysesthesias along C2 and C3; reversal of Brachioradialis reflexes of some concern as it could remotely suggest cervical myelopathy; mild mostly sensory C6-C7 deficits; paraspinal spasm in the lumbar spine with some marked restriction of mobility; tenderness over the sacroiliac joints; deficits at L5-S1 more on the right; and marked increased sympathetic tone or poverty of microcirculation with decreased skin temperature distally in her feet and only the posterior tibial pulse heard with Doppler.  (T. 279-80.)  Pedal pulses were not palpable on the right.  (T. 280.)  Dr. Kidwai noted that an MRI of the lumbar spine done more than a year prior showed diffuse degenerative changes involving the disc spaces and the posterior elements with post-operative changes with clumping of the intrathecal roots suggestive of arachnoiditis and dural ectasia at the operative site suggestive of severe perineural scarring.  (T. 280.)  He also indicated that Plaintiff was "advised to try less aggressive measures and leave surgery as a last result, though in the presence of symptoms/relentless pain, and pertinent neurological deficits and radiological findings redo but salvage surgery at L5/S1 seems to be a reasonable option."  (T. 280-81.)

In February 2017, Dr. Kidwai observed no gross or significant change in Plaintiff's examination with her deep tendon reflex still being absent at the right ankle; she had continued paraspinal spasm in the cervical and lumbar spine; tenderness over the sacroiliac joints; increased sympathetic tone or poverty of microcirculation with decreased skin temperature in her feet; and deficits at C6-C7 and L5-S1.  (T. 269.)  Dr. Kidwai indicated that MRIs of the lumbar and cervical spine showed diffuse degenerative changes, with the lumbar changes causing a degree of inferior foraminal, subarticular, and lateral recess stenosis; those diagnostic studies also showed post-operative changes with clumping of the intrathecal roots suggestive of

15

arachnoiditis and dural ectasis at the operative site suggestive of severe perineural scarring. (T. 270, 275-277.) Dr. Kidwai indicated the EMG/NCT studies did confirm the clinical impression of lumbosacral radiculopathies. (T. 270, 274.) Dr. Kidwai's discussion of his examination findings and the diagnostic imaging therefore do not support the ALJ's conclusions that Dr. Kidwai's opined restrictions appeared to be based upon Plaintiff's subjective complaints. (T. 21.)

Finally, the Court is not persuaded by Defendant's contention that the ALJ was not required to apply the treating physician rule because Dr. Kidwai did not qualify as a treating source. (Dkt. No. 8 at 14-18, 22.) Specifically, Defendant argues Plaintiff saw Dr. Kidwai twice and "a doctor/patient relationship that would qualify as an ongoing treatment relationship never developed." (*Id*. at 16; T. 268-71, 278-81.) Defendant further argues that Dr. Kidwai's treatment notes suggest "he did not have enough information to form an opinion of Plaintiff's permanent or long-term functioning." (*Id*.; T. 271, 281.) However, the ALJ identified Dr. Kidwai as a treating provider and indicated he had "a significant treatment relationship" with Plaintiff, though the ALJ did not discuss the nature or extent of this relationship in detail nor identify Dr. Kidwai as a neurosurgeon. (T. 21.) Whether or not the treatment relationship was actually as "significant" as described by the ALJ is not now at issue for this Court, but rather it is of concern whether the ALJ properly considered and discounted Dr. Kidwai's opinions once identifying him as a treating provider. (*Id*.) Further, while Dr. Kidwai presumably only examined Plaintiff twice based on the evidence in record, he did have a basis for his opinions including those examinations, the diagnostic imaging results, the results of the EMG/NCT studies, and his own specialization as a neurosurgeon. (T. 268-81.) Further still, if Dr. Kidwai did not have enough information to form an opinion of Plaintiff's permanent or long-term

functioning, it is unclear how the ALJ would be able to determine Plaintiff's RFC with much of the same evidence before him.

For the reasons above, the Court is not convinced the ALJ properly considered the opinion evidence including the opinions of Dr. Kidwai or that the substance of the treating physician rule was not traversed in the course of the ALJ's analysis. *Estrella*, 925 F.3d at 96. Therefore, the Court finds the ALJ's analysis of Plaintiff's RFC and the medical opinions is not supported by substantial evidence and thus remand is required.

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). It is possible, particularly with further development of the record on remand such as a medical record review or examination by a neurosurgeon or other appropriate specialist, the ALJ could make a proper RFC determination as to Plaintiff that would not be incompatible with her performing her past relevant work as a social service aide and community placement worker. Thus, this Court cannot conclude "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and therefore cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 8) is **<u>DENIED</u>**; and it is further

**ORDERED** that the decision of the Commissioner is **VACATED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical opinions and Plaintiff's RFC, and other further proceedings consistent with this Decision and Order.

Dated: April 22, 2020
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge